
# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-17-109

GARLAND TRICE

APPELLANT

V.

CITY OF PINE BLUFF

APPELLEE

**Opinion Delivered:** November 29, 2017

APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT
[NO. 35CR-15-588]

HONORABLE JODI RAINES DENNIS, JUDGE

AFFIRMED

## BART F. VIRDEN, Judge

Garland Trice appeals the Jefferson County Circuit Court's decision finding him guilty of violating City of Pine Bluff Ordinance section 16-1(b)(1), Failure to Remove or Abate a Nuisance. Trice was assessed a $1000 fine and sentenced to 30 days' jail time, suspended contingent upon razing the property. We affirm.

Trice is the designated agent for Medic Transport, which is the owner of the "Sahara Temple" located at 620 South Main Street in Pine Bluff's historic district. On July 25, 2014, part of the third-floor roof of the Sahara Temple collapsed. Trice was out of the state at the time, but he immediately asked an associate to assess the damage. Trice also engaged the services of Keith Fix, a principal engineer at Red Pepper Consulting, Inc., who assessed the state of the building. In the letter dated July 31, 2014, Fix explained that part of the third-floor roof had collapsed likely due to the failure of the weakened trusses. The walls that

were not fully attached to the roof remained standing, while the walls that were in the path of the shifting roof collapsed. Fix opined that there was no immediate danger of total collapse, but he recommended closing off traffic in front of the building to the centerline of the roadway until demolition of the collapsed area was complete, and he suggested that Trice take mitigating measures regarding the remaining roof. Fix also recommended that access to the perimeter surrounding the building should be restricted.

Trice received a letter from the Department of Inspection and Zoning (Inspection and Zoning) dated August 4, 2014, in which he was informed that he was in violation of Ordinance No. 6042 section 102.2, which sets forth that "the owner or the owner's designated agent shall be responsible for the maintenance of buildings, structures and premises." The letter informed Trice that he was expected to have the property rehabilitated or demolished according to the required timeframes regarding "major" and "minor" violations. A City of Pine Bluff Inspection Department building inspection report also dated August 4, 2014, described fifteen "major" structural issues. Trice was informed that he must obtain permits to either repair or demolish the building and that failure to repair or demolish would result in the presentation to the Pine Bluff City Council (the City Council) of a resolution declaring the property a nuisance and ordering its abatement. The Inspection and Zoning letter provided that Trice may appeal a declaration of nuisance status at the planning and development meeting.

On September 8, 2014, Trice submitted a "Plan for Addressing 620 Main Natural Disaster (Collapse)" to Inspection and Zoning. Trice explained that this was a "cursory" plan and that a "more comprehensive plan will be provided when we get additional

information from the structural engineer and architect." In a letter dated September 10, 2014, Mitzi Ruth of Inspection and Zoning responded, reminding Trice that "when your contracts with the structural engineer, and architect, are completed, we ask to be provided with the documents and plans involving both parties for review within our department. Once approved, necessary permits will be issued."

On September 14, 2014, the Pine Bluff City Council (City Council) voted to amend ordinance 16-1. The amendment to section (b)(1) made it a misdemeanor offense to fail to abate a nuisance, and it also allowed the imposition of a fine of up to $1000 and detainment in the county jail for up to 180 days.

In a letter dated November 3, 2014, Inspection and Zoning informed Trice that this was his final notice of condemnation and that a hearing on whether to order removal of the structure would be held on December 1, 2014. On November 4, 2014, Trice faxed Inspection and Zoning a one-page outline of his plan to renovate the building:

**Phase I**
1. Clean and remove debris from 7th Avenue
2. Bring North West wall down to 2nd level
3. Bring North West wall down to 2nd level alone with West wall
4. Salvage roof material
5. Asbestos assessment
6. Secure remaining roof
7. Weatherize windows

**Phase II**
1. Replace roof
2. Rehab exterior of building

**Phase III**
1. Remodel first level

**Phase IV**
1. Remodel 2nd level balcony

**Estimated Time**
28–36 months

**Note:** Ongoing asbestos test reveal none.
See attachment

Inspection and Zoning responded that this plan was inadequate because it lacked professional statements and stamped plans from an architect or a structural engineer and because the project timeline of 28 to 36 months was unreasonable.

On November 18, 2014, the planning and development committee met with Trice to discuss the Sahara Temple, and pursuant to that meeting, it placed the building on the condemnation list. On December 1, 2014, the City Council discussed a resolution to declare the Sahara Temple a nuisance and order its abatement. During that discussion, an alderman moved to amend, noting that Trice intended to appeal the notice of condemnation to the Code Enforcement Board of Zoning Adjustments and Appeal (the Board). The City Council decided to remove the Sahara Temple from the list until the appeal could be heard. On December 8, 2014, Trice filed a notice of appeal with the Board contesting the City Council's decision that the building should be condemned. In his appeal he made three requests:

1. That the Pine Bluff City Council follow ordinance #5444 and Due Process Rights built into the ordinance.

2. That the decision of Planning and Development Committee be tossed; i.e., null and void.

3. That Pine Bluff City Council pull from its agenda any action on 622 Main Street.[1]

---

[1]At other places in the record, the address of the Sahara Temple is listed as 620 S. Main Street.

In December 2014, the Board was inactive due to the recent deaths of some of its members. On December 15, 2014, the vacant positions on the Board were filled, and the Board reconvened.

Trice received a notice of hearing scheduled for January 20, 2015. Subsequent to that hearing, the Board informed Trice in a letter dated January 25, 2015, that he did not succeed in his appeal. The Pine Bluff Police Department Quality of Life Division issued a "Final Council Notice of Condemnation" on January 26, 2015.

On February 17, 2015, the City Council passed a resolution declaring Sahara Temple a nuisance. On March 20, 2015, the police department informed Trice by letter that he would be issued a citation for failure to demolish his condemned property if he did not obtain a demolition permit and begin work within 5 days. The letter included notification that the City Council had amended section 16-1 of the city ordinances in September 2014 making it unlawful for the owner of a condemned property to not raze the property. A citation for failure to abate a nuisance was issued by the Pine Bluff Police Department on April 20, 2015.

Trice appealed to the district court, and a bench trial was held on June 14, 2016. Trice was assessed $1100 in fines and 30 days in jail suspended dependent on razing the building.

Trice appealed to the circuit court, and a bench trial took place on October 24, 2016. At the trial the following relevant testimony was offered. Shawn Howell, the chief of the Pine Bluff Fire Department, testified that on July 25, 2014, the fire department received a call about a possible explosion on Main Street. When he arrived, he observed that the roof

of the Sahara Temple had partially collapsed, and he was concerned that the building might collapse. Howell explained that the "collapse zone" of a building is one and a half times the height of the building, which was about 60 feet around the Sahara Temple. Howell testified that he secured the area to prevent damage to the adjacent buildings and injury to drivers and pedestrians.

Keith Fix, the structural engineer from Red Pepper Consulting Trice had engaged to assess the building, testified that weak trusses were the most likely cause of the collapse. Fix testified that the remaining freestanding walls should not be left standing because they are a collapse hazard but that the building itself is "not in any sort of danger of any sort of imminent collapse." Fix testified that the walls did not have to be torn down if someone were to "come up with a framing system for the roof that was integrated into using those walls as–is[.]" Fix also offered that when he inspected the building in July 2014, he observed what he thought might be loose masonry, but he was not certain. Fix explained that loose masonry was a debris hazard, and he testified that he recommended that a mason examine the building.

Mitzi Ruth, the current director of Inspection and Zoning and chief inspector during the events leading up to the trial, testified that she had communicated with Trice about his options regarding the property and had explained to him how to acquire a permit. Ruth testified that she specifically informed Trice that he must provide stamped architectural plans or a structural engineer's plans that would show that the building would meet code requirements, and she explained that these plans are required by the State.

Ruth also testified about the hearing of Trice's appeal. She clarified that because some Board members had died and had not been replaced, the Board was not active around December/January. Ruth explained that she had not given Trice notice about the possibility of appealing to the Board because it was not active at that time, but the letter sent to Trice informed him of his right to appeal to the Planning and Development Department.

Architect Henry Sadler, who sits on the Historic District Commission, testified that, even if a building is located within the historic district, if there is an emergency involving the possibility of collapse the building code enforcement board has the authority to determine that demolition is necessary. Sadler explained that the Historic District Commission would not be involved in such cases and that Trice had never petitioned the Historic District Commission for a special permit regarding the character of the building. Sadler also stated that he considered Trice's plan for renovation inadequate. Lloyd Holcomb, First Ward Alderman and member of the planning and development committee, testified that he also had concerns about the adequacy of Trice's plan for renovation when he had heard Trice's appeal. He testified that the planning committee heard Trice's appeal and decided to put the building on the condemnation list. Holcomb explained his personal concern about the Sahara Temple that Trice's plan for renovation was insufficient.

Frank Washington, a building contractor and member of the Board, testified that he had inspected the building the day the roof fell in and that he had been very concerned about collapse. He also testified the first appeal in this case came to the Board in 2015 after the Board had been reformed, and he voted to deny the appeal. Washington explained that after the Board makes a decision, the matter goes back to the City Council.

Joe Harrell, a lieutenant with the Pine Bluff Police Department, testified that he was assigned to work the Quality of Life Division, a purpose of which is code enforcement. Harrell recounted that he issued a citation on April 20, 2015, after having determined that no action had been taken regarding the demolition or repair of the building.

Defense counsel moved for dismissal at the close of the City's case, and the motion was denied.

Garland Trice offered testimony that he owns the Sahara Temple, and though he was out of state when the roof partially collapsed in July 2014, he very quickly began to deal with the issue. Trice explained that Mitzi Ruth had given him permission to remove the debris, which had amounted to 15 trailer loads. Trice testified that initially he had a permit but that it was withdrawn, and he was forced to stop repairs. At the trial, Trice disagreed with the inspection report setting forth 15 "major" problems with the structure, and he denied that he was ever verbally told that he needed plans from an architect or stamped plans from a structural engineer, although he admitted that he might have gotten that information from a letter. Trice explained that contracting with an architect to obtain plans for a roof was in "phase two" of his plan to renovate the building and that first he wanted to complete "phase one," which centered on removal of debris and any environmental hazards that may exist. Trice asserted that he had begun working on the third-floor demolition—with a permit—within thirty days of when he received notice of condemnation.

Trice testified that the Board heard his appeal, but he explained that he did not have a chance to appeal to the city planning commission. Trice renewed his previous motion to dismiss, and it was denied.

On November 9, 2016, the circuit court entered an order finding Trice guilty of failure to abate a nuisance. Trice was assessed a $1000 fine and was ordered to serve 30 days in jail; however, the circuit court suspended Trice's sentence contingent on his razing the property. Trice filed a timely notice of appeal.

## II. *Issues on Appeal*

Trice raises two main points on appeal. First he argues that the event giving rise to the cause of action happened before the amendment of the ordinance; and thus, the circuit court erred by applying section 16–1(b)(1) retroactively to his case. Second, Trice asserts that his due-process rights were violated because the proper entities had not handled his case. Trice breaks his procedural due process argument into four parts: (1) whether the Historic District Commission had jurisdiction over his property located in the historic district; (2) whether the City interfered with his compliance by wrongfully denying the necessary permits; (3) that the Board of Adjustments and Appeals was not in place when the roof collapsed, when the City condemned his property, or when a resolution was heard and passed declaring his property a nuisance; and (4) whether the property was ever properly certified as a nuisance as required by the ordinance.



A. Ex Post Facto Application of Ordinance 16–1(b)(1)

Trice argues that the "event giving rise to the cause of action" is the July 25, 2014 collapse of the building, and because the collapse took place two months before ordinance section 16-1(b)(1) was amended in September 2014, application of the amended statute is an ex post facto violation. We disagree. In fact, Trice's citation for failure to abate the nuisance is the event giving rise to the cause of action, and this event occurred around seven months *after* section 16-1(b)(1) had been amended.

In *Duncan v. State*, 337 Ark. 306, 307–08, 987 S.W.2d 721, 722 (1999), our supreme court described how an ex post facto violation occurs:

> Article 1, § 10, of the United States Constitution provides that "(n)o state shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts. . . ." Article 2, § 17, of the Arkansas Constitution similarly provides, "No . . . ex post facto law . . . shall ever be passed. . . ." A law is in violation of the Ex Post Facto Clause if it is retroactive and it disadvantages the accused by altering the definition of criminal conduct or by increasing the punishment for the crime.

The application of ordinance section 16-1(b)(1) is violative of the Constitution if it retroactively alters the definition of "failure to abate a nuisance" or if it increases the punishment for failure to abate a nuisance *after* Trice had been cited for the crime of failing to abate that nuisance. Trice was cited for violating the city code by failing to abate a nuisance months after the ordinance had been changed; thus, no ex post facto application of the punishment for failure to abate a nuisance occurred. On this point we affirm.



## B. Due Process

### 1. *Whether the Historic District Commission had jurisdiction*

Generally, procedural due process requires that a hearing before an impartial decision maker be provided at a meaningful time and in a meaningful manner before a governmental decision that deprives individuals of a liberty or property interest. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Trice argues that the Historic District Commission was the proper entity with jurisdiction over his case and that the City improperly exercised jurisdiction; therefore, his right to due process was violated. We disagree.

Trice asserts that the Historic District Commission is the entity charged with "preserving the property, keeping it up, and making sure structures are in compliance," and the City failed to "consult or advise" the Historic District Commission to determine if action was necessary regarding his property. We take issue with Trice's characterization of the purpose and authority of the Historic District Commission. At the trial, architect Henry Sadler, who is on the Historic District Commission, testified that building owners could apply for "certificates of appropriateness" from the Historic District Commission. Sadler explained that such permits allow cosmetic and structural modifications—anything that would affect the "historical character" of the building. Sadler further testified that "if a building code official deems that it is necessary to do an emergency demolition, they wouldn't come through the Historic District Commission."

Arkansas Code Annotated section 14-56-203 provides that,

[c]ities of the first class, cities of the second class, and incorporated towns may order the removal or razing of, or remove or raze, buildings or houses that in the opinion

of the city council or town council have become dilapidated, unsightly, unsafe, unsanitary, obnoxious, or detrimental to the public welfare and shall provide by ordinance the manner of removing and making these removals.

Ark. Code Ann. § 14-56-203 (Supp. 2017).

Furthermore, section 2-360 of the Pine Bluff City Ordinances sets forth the following:

This division [Historic District Commission] shall not prevent the restoration, rehabilitation, renovation, preservation, alteration, construction, or demolition of any such feature that the building inspector or similar agent of the city shall certify is required for the public safety.

Pine Bluff, Ark., Code § 2-360 (2017).

Trice cites no authority superseding the statute giving authority to cities to order removal of unsightly and unsafe buildings detrimental to public welfare. The City declared Trice's building a public nuisance and blocked off the street and the perimeter of the building in part to prevent injury to the public. The issues regarding the Sahara Temple went beyond the character of the building and into the safety of the public; therefore, the authority to determine the status of the building belongs to the City, and due process was achieved. On this point we affirm.

2. *Whether the City interfered with Trice's compliance by denying permits*

Trice argues that there is no requirement in any city ordinance that the petitioner must submit plans from an engineer or an architect in order to obtain a repair permit; thus, Inspection and Zoning violated his due-process rights when his request for a repair permit was denied on that basis. Trice also argues that Fix's assessment of the state of the building is an adequate plan for renovation and that Trice's experience, qualifications, and licensure

are sufficient such that a permit for repair should have been issued to him. Trice cites no authority to support his argument, and his argument is not well taken.

Municipal corporations have the power to regulate the repair of buildings. Ark. Code Ann. § 14-56-201 (Repl. 1998). In order to make an informed decision about whether repair is feasible and will promote public safety, Inspection and Zoning reasonably exercised its regulatory power by requesting more detailed plans from an engineer or an architect, as is shown in the written correspondence in the record. Mitzi Ruth testified that Trice's plan for renovation did not set forth how he would stabilize the partially collapsed third floor roof, and she explained that an architect's or structural engineer's plan would be necessary for the city to "know it would meet code." Trice testified that contracting with an architect to obtain plans for a roof were a part of his renovation plan, but he did not intend to produce the plans until "phase two" after the debris had been removed. Trice does not demonstrate how the Inspection and Zoning's refusal to issue a repair permit under these circumstances is a procedural due process violation.[2] On this point, we affirm.

3. *The City did not have the proper board in place during the events of 2014*

Trice asserts that the Board was not in place during 2014 when the roof collapsed, when the City condemned his property, and when the City declared his property a nuisance. Ruth testified that several members of the Board had died and had not been replaced as of

---

[2]The August 4, 2014 letter included the direction that the price of the repair permit would be based on the estimated cost of repairs. Trice did not include an estimated cost of repairs in either of the plans for renovation he submitted to Inspection and Zoning; therefore, he failed to meet one of the requirements for obtaining a permit.

early December 2014. The record shows that new Board members were instated on December 15, 2014, and Trice and others testified at trial that the Board heard his appeal early in 2015; however, Trice does not clearly explain how he was denied due process or how he was adversely affected by the nonexistence of the Board during the specified events. Failure to cite authority or develop an argument is reason to affirm. *Ashley v. State*, 358 Ark. 414, 191 S.W.3d 520 (2004). Trice failed to develop his argument or provide any supporting authority, and we affirm.

### 4. *The certification of 620 Main Street as a nuisance*

Trice argues for the first time on appeal that 620 Main Street was never properly certified as a nuisance as required by the ordinance, thus, he was denied procedural due process. Trice did not appeal to the circuit court the Board's decision declaring his property a nuisance, and he is barred from raising this issue now. *See* Ark. Code Ann. § 14-56-425(a)(1) (Supp. 2017) (Appeals from the final administrative decision by a municipal body shall be taken to the circuit court of the appropriate county.)

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Althea Hadden-Scott*, for appellee.

14